**Steven M. Wilker**, OSB #911882
  Direct Dial: 503.802.2040
  Email: steven.wilker@tonkon.com
**Sarah M. Einowski**, OSB #093412
  Direct Dial: 503.802.5738
  Email: sarah.einowski@tonkon.com
**Alexander M. Tinker**, OSB #144939
  Direct Dial: 503.802.5734
  Email: alex.tinker@tonkon.com
**Megan R. Reuther**, OSB# 153919
  Direct Dial: 503.802.2174
  Email: megan.reuther@tonkon.com
Tonkon Torp LLP
888 SW Fifth Avenue
Suite 1600
Portland, OR 97204
*Cooperating Attorneys for the ACLU Foundation of Oregon, Inc.*

See signature page for additional counsel

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **JOSEF HABER**, an individual; **PATRICK GARRISON**, an individual; **JENNIFER NICKOLAUS**, an individual; **CHRIS WHALEY**, an individual; **JADE STURMS**, an individual; on behalf of themselves and all others similarly situated**,**<br><br>Plaintiffs,<br><br>v.<br><br>**CITY OF PORTLAND**, a municipal corporation; **TED WHEELER**, in his individual capacity; retired **PORTLAND POLICE CAPTAIN LARRY GRAHAM**, in his individual capacity; **PORTLAND POLICE OFFICER RYAN LEE**, in his individual capacity; **PORTLAND POLICE OFFICER CHRIS LINDSEY,** in his individual capacity; **PORTLAND POLICE OFFICER JEFFREY MCDANIEL,** in his individual capacity; and **PORTLAND POLICE OFFICER JOESPH** | Civil No.   3:17-cv-1827<br><br>**FIRST AMENDED COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

PAGE 1 – **FIRST AMENDED CLASS ACTION COMPLAINT**

**SANTOS,** in his individual capacity.

Defendants.

## INTRODUCTION

1. This is a class action, pursuant to the Fourth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983, and Article I, Section 9, of the Oregon Constitution, for Defendants' unlawful actions against Plaintiffs and Plaintiff Class in Portland, Oregon, on June 4, 2017.

2. On June 4, 2017, Portland Police Bureau Officer Defendants Larry Graham, Ryan Lee, Chris Lindsey, Jeffrey McDaniel, and Joseph Santos (collectively "Defendant PPB Officers"), under the supervision and direction, or the approval, of Portland Mayor and Police Commissioner Ted Wheeler ("Wheeler"), detained and/or arrested at least 353 peaceful protesters and other bystanders or observers ("Plaintiff Class") on Southwest Fourth Avenue in-between Southwest Morrison Street and Southwest Alder Street. After ordering protesters to leave Chapman Square and head north on Southwest Fourth Avenue, Defendant PPB Officers corralled the protesters—and anyone else who happened to be in the area—on the street and sidewalks, and did not allow them to leave. This police tactic is known as a "kettle" or "box-in." For an hour or more, people were seized by Defendant PPB Officers, with no access to food or bathrooms. The members of the Plaintiff Class, including the individual named Plaintiffs, were allowed to leave only after Defendant PPB Officers photographed each individual and recorded his or her identifying information. Wheeler and Defendant PPB Officers' actions violated the Fourth and Fourteenth Amendments of the United States Constitution, and Article I, Section 9, of the Oregon Constitution, for arresting the members of the Plaintiff Class without individualized probable cause, or, alternatively, detaining the members of the Plaintiff Class without individualized reasonable suspicion.

3. Defendant City of Portland (the "City") has a policy and/or a custom and practice that amounts to a policy of kettling protesters without individualized probable cause and/or

reasonable suspicion. The City's policy and/or the City's custom and practice that amounts to a policy of kettling protesters without probable cause and/or individualized suspicion violates the Fourth and Fourteenth Amendments of the United States Constitution and Article I, Section 9, of the Oregon Constitution.

4. Plaintiffs seek declaratory relief and/or a jury finding of liability that Wheeler's and Defendant PPB Officers' actions on June 4, 2017, in seizing the members of the Plaintiff Class for over an hour and then requiring identification and photographing individuals before they were allowed to leave violated the Fourth and Fourteenth Amendments of the United States Constitution and Article I, Section 9, of the Oregon Constitution.

5. Plaintiffs also seek declaratory relief finding that the City's policy, and/or its custom and practice that amounts to a policy, of kettling protesters without individualized probable cause and/or reasonable suspicion violates the Fourth and Fourteenth Amendments of the United States Constitution and Article I, Section 9, of the Oregon Constitution.

6. Plaintiffs seek an award of compensatory or, at least, nominal damages for violation of their constitutional rights on June 4, 2017, and reasonable attorney fees.

## JURISDICTION AND VENUE

7. This court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3) because Plaintiffs' claims arise under the Fourth and Fourteenth Amendments to the Constitution of the United States and 42 U.S.C. § 1983.

8. This court has supplemental jurisdiction over the Oregon Constitution claims under 28 U.S.C. § 1367 because the claims are so related to the claims in the action within the original jurisdiction of this Court that they form part of the same case or controversy under Article III of the United States Constitution.

9. Venue is proper under 28 U.S.C. § 1391 because Defendants are residents of this District and the events or omissions giving rise to this lawsuit occurred here.

/ / /

## THE PARTIES

10. Plaintiffs Josef Haber, Patrick Garrison, Jennifer Nickolaus, Chris Whaley, and Jade Sturms ("Plaintiffs") attended various protests on June 4, 2017, and were seized by Defendant PPB Officers on Southwest Fourth Avenue and Southwest Morrison Street. Plaintiffs desire and plan to participate in future protests and demonstrations in Portland, Oregon.

11. The City is a municipal corporation located in Multnomah County, Oregon. The Portland Police Bureau ("PPB") is an agency of the City and under the City's direction and control.

12. Defendant Wheeler is the Mayor of the City of Portland, Oregon. As Mayor, Wheeler is the chief executive of the City and oversees all City agencies, including the PPB. Wheeler is also the Police Commissioner, the member of the City Council assigned to oversee the PPB and, therefore, has oversight of and is responsible for the PPB.

13. Defendant PPB Officers Graham, Lee, Lindsey, McDaniel, and Santos are, or were at the relevant time, PPB Officers that were personally involved in effecting the kettle on June 4, 2017, or directed and/or supervised the implementation of the kettle on June 4, 2017.

## FACTUAL BACKGROUND

14. The City has a long history of an engaged citizenry and is a hub for First Amendment activity, with numerous public marches and large public gatherings each year. Public assemblies enrich the fabric of Portland by providing a means of expression when people feel unheard through other methods, a beacon of solidarity and connection for people impacted by the issues subject to protest, a vehicle to spark conversations and debate about important issues, and an opportunity to form community and connections, leading to constructive engagement, organizing, and action.

15. Portland also has a history of its law enforcement agency—PPB—clashing, often violently, with protesters. The PPB has become increasingly militarized in its tactics, deploying droves of officers wearing tactical dress, including helmets, carrying batons, and full-body riot

shields ("riot gear"), and using chemical agents as crowd-control weapons. These crowd-control weapons include tear gas, pepper-spray bullets, and flash-bangs (which create a loud explosion and a very bright flash of light). On multiple occasions, PPB officers have, without warning, deployed chemical agents against protesters, as well as non-protesting bystanders, members of the press, and patrons of nearby businesses.

16. The PPB, at the direction of the City, has a policy and/or a custom and practice that amounts to a policy of kettling protesters without individualized probable cause and/or reasonable suspicion. For example, in November 2014, PPB officers kettled demonstrators who were protesting a grand jury decision not to indict Ferguson, Missouri, Officer Darren Wilson in the August 2014 shooting death of an unarmed black man, Michael Brown. And on January 20, 2017, PPB Officers kettled demonstrators who were protesting the inauguration of President Donald Trump.

17. Since the presidential election in November 2016, Portland has seen an increasing number of protests, coupled with an increasing number of violent clashes between the PPB and protesters. And the interaction between police and protesters has escalated at each event, culminating in the events that are at issue in this lawsuit.

## JUNE FOURTH RALLY

18. On June 4, 2017, a pro-President Trump rally was held in Terry Shrunk Plaza in downtown Portland, Oregon ("Trump Rally"). The Trump Rally was organized by Joey Gibson, founder of an organization called Patriot Prayer. Patriot Prayer events typically attract a coalition of white supremacists, anti-government militia groups, and online agitators known as the "alt-right" or Neo-Nazis. Patriot Prayer received a permit from the federal government to hold the rally at Terry Shrunk Plaza.

19. In response to the Trump Rally, three counter-protests were organized: labor unions organized in front of the Edith Green-Wendell Wyatt Federal Building, a group called Rose City Antifa organized a protest in Chapman Square, and a coalition called Portland Stands

United Against Hate organized a protest at City Hall (collectively "Counter Protests"). Unaffiliated individuals also joined to counter protest the Trump Rally and filled in with the various Counter Protests. Tensions between the Trump Rally and the Counter Protests were particularly high because the Trump Rally came only days after a self-proclaimed white-supremacist stabbed three men, killing two, on a MAX train after the men stood up to him when he was insulting a group of Muslim women.

20. Plaintiff Patrick Garrison attended the protests as a legal observer for the ACLU of Oregon. As a legal observer, Garrison attended the protests as a neutral observer, and videotaped protester and police interactions. Throughout his attendance at the protest, Garrison was wearing a bright-blue ACLU Legal Observer vest that clearly identified him as a legal observer.

21. Plaintiffs Jenny Nickolaus and Chris Whaley are wife and husband and former owners of a restaurant in Southeast Portland. They attended the Counter Protests to support the various counter-protest groups and to stand against hate and white supremacy.

22. Plaintiff Josef Haber owns a martial arts and acupuncture studio in Northeast Portland. As the descendent of German Jews, he wanted to stand against hate, oppression, and racism. Since the November 2016 presidential election, Haber was motivated to be more involved in politics and political demonstrations, but was unable to do so because he contracted shingles in his eye. By June 4th, although Haber was still not completely recovered, he was well enough to attend the Counter Protests. Because of the shingles virus and damage to his eye, at the time of the June 4th protests, Haber had to take medication at specified times.

23. Plaintiff Jade Sturms worked at a design firm in Northeast Portland. She attended the Counter Protests to support the various counter-protest groups and to stand against hate and white supremacy.

24. The Trump Rally was scheduled to start at noon and end at 4:00 p.m. From the beginning of the rally, there was a large law enforcement presence. Officers from the PPB, the Multnomah County Sheriff's Office, Oregon State Police, Federal Protective Services, and the

PAGE 6 – **FIRST AMENDED CLASS ACTION COMPLAINT**

United States Marshals Service were patrolling and present at the protests. A majority of the officers were in full riot gear and created a perimeter, surrounding Terry Shrunk Plaza and the Trump Rally. The officers had their backs to the Trump Rally, facing the Counter Protests. Officers kept the two groups separated from each other, and would not let protesters from either side cross the police line.

25. Before the Trump Rally was scheduled to end, law enforcement officers ordered the closure of the south half of Chapman Square and ordered the counter-protesters to move north. Sometime thereafter, law enforcement (without legal justification) announced that the assemblies in the northern half of Chapman Square and Lownsdale Square to its north were unlawful and directed the individuals assembled there to leave the area by heading north on Fourth Avenue. The purpose of these unjustified closure orders was to serve as a diversion so that the counter-protestors would not be present when the Trump Rally concluded and its participants left the area.

26. Because of the large number of people in the squares, it took time for the assembled counter-protesters and others to leave. Police continued to order that Chapman and Lownsdale Squares were closed and that people needed to leave. As the counter-protesters were leaving the squares, without any warning, the police began shooting tear gas and pepper spray bullets into the crowd. The police tactics created a scene of confusion and fear.

27. Plaintiffs and the others assembled there continued to exit the park, and followed police orders to move north on Southwest Fourth Avenue toward Southwest Morrison Street.

28. As Plaintiffs and others who had assembled in Chapman and Lownsdale Squares marched, law enforcement ordered them to stay on Southwest Fourth Avenue and ordered that they keep moving north. When members of the Plaintiff Class and others who were leaving the area attempted to turn off of Fourth Avenue, they were stopped from doing so by law enforcement personnel.

29. The members of the Plaintiff Class and others followed the orders and marched peacefully, chanted slogans, and did not engage in acts of violence. When they reached

PAGE 7 – **FIRST AMENDED CLASS ACTION COMPLAINT**

Southwest Morrison Street, Defendant PPB Officers clad in full riot gear, surrounded them, blocking all exit points. When Defendant PPB Officers kettled Plaintiffs and the other members of the Plaintiff Class they had no individualized reasonable suspicion or individualized probable cause to detain or arrest them.

30. Now retired Captain Larry Graham, as the commanding officer in the PPB command center, ordered the detention of the members of the Plaintiff Class. Graham did not have individualized reasonable suspicion or individualized probable cause to detain or arrest the members of the Plaintiff Class. He ordered the members of the Plaintiff Class to be detained and/or arrested for doing what they had been ordered to do by the PPB, i.e., to leave the area by going north on Fourth Avenue.

31. During the June 4, 2017 protests, Wheeler supervised and monitored the protests, and the PPB's response to the protests, from the PPB's command center. At the very least, Wheeler approved of Defendant PPB Officers' kettling of the members of the Plaintiff Class without individualized probable cause and/or individualized reasonable suspicion.

32. Defendant PPB Officers surrounded the members of the Plaintiff Class and did not permit them to leave. The Plaintiff Class members were confused and scared. When some Plaintiff Class members attempted to leave through the parking garage on Southwest Fourth Avenue, one or more of Defendant PPB Officers shot them with pepper-spray bullets. By that point, if not before, it was clear to Plaintiff Class members that they were not free to leave the kettle.

33. Defendant PPB Officers eventually announced that the Plaintiff Class members were "detained for purposes of investigation of disorderly conduct." When the announcement was made, Defendant PPB Officers had no individualized probable cause or individualized reasonable suspicion to detain or arrest any of the members of the Plaintiff Class. Defendant PPB Officers kept the Plaintiff Class members in the kettle for an hour or more without access to food or bathrooms and, in most cases, water.

34. Eventually Defendant PPB Officers ordered the members of the Plaintiff Class to line up and present photo or other identifying information. Defendant PPB Officers would not let the members of the Plaintiff Class leave until each individual was photographed by Defendant PPB Officers and had his or her information recorded.

35. Once the members of the Plaintiff Class complied with Defendant PPB Officers orders, they were ordered to leave the area, and they complied with that order.

## CLASS ALLEGATIONS

36. Under Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure, Plaintiffs bring this action on behalf of themselves and other similarly situated people that were caught in Defendant PPB Officers' kettle on June 4, 2017.

37. The Plaintiff Class is so numerous that joinder of all members is impracticable. The class consists of at least 353 individuals who were caught in Defendant PPB Officers' kettle, either because they had attended the Counter Protests or because they were on Southwest Fourth Avenue when Defendant PPB Officers blocked all exit points.

38. There is a well-defined community of interest in the questions of law and fact affecting the class as a whole. The questions of law and fact common to the class predominate over any questions affecting solely individual members of the action, which include whether Defendants violated Plaintiffs' and Class Plaintiffs' right to be free from unreasonable seizure under the Fourth and Fourteenth Amendments of the United States Constitution and Article I, Section 9, of the Oregon Constitution.

39. Plaintiffs' claims are typical of the class. Plaintiffs, like all other members of the Plaintiff Class, were detained and/or arrested by Defendant PPB Officers in the kettle on June 4, 2017, without any individualized reasonable suspicion or probable cause.

40. Plaintiffs will fairly and adequately protect the interests of the class. Plaintiffs have retained counsel competent and experienced in class action litigation and the representation of individuals in Oregon.

41. This case is appropriate for class certification under Rule 23(b)(1) of the Federal Rules of Civil Procedure because prosecuting separate actions by individual plaintiffs against some or all of Defendants would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for Defendants.

42. This case is appropriate for class certification under Rule 23(b)(2) of the Federal Rules of Civil Procedure because Defendants have acted on grounds that apply generally to the class—specifically, all individuals detained and/or arrested in the kettle on June 4, 2017—so that final declaratory relief and/or a finding of liability on behalf of the Plaintiff Class is appropriate.

43. A class action is the appropriate and superior method for the fair and efficient adjudication of this controversy. Prosecuting separate actions would create the risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants. Allowing this lawsuit to proceed as a class action will permit the class of similarly situated persons to prosecute their common claims in a single forum simultaneously and efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would entail.

44. To the extent that any member of the class could afford individual litigation, it would be unduly burdensome to the judicial system. Concentrating this litigation in one forum will promote judicial economy, consistency, and parity among the claims of the individual members of the class.

45. Plaintiffs know of no difficulty that would be encountered in the management of this litigation that would preclude its maintenance as a class action.

46. On May 31, 2018, the Court entered an Order granting Plaintiff's motion for class certification based on the parties' agreed definition of the class as:

> "All individuals who were assembled on Southwest Fourth Avenue between Southwest Morrison Street and Southwest Alder Street in Portland, Oregon on the afternoon of June 4, 2017, and who were contained and prevented from leaving

by officers of the Portland Police Bureau, along with other law enforcement officers."

## FIRST CLAIM FOR RELIEF

### (AGAINST DEFENDANT PPB OFFICERS AND WHEELER)

**Fourth and Fourteenth Amendments to the United States Constitution**

**and 42 U.S.C. § 1983**

47. Plaintiffs incorporate by reference the allegations above.

48. Individual Defendants are liable in their individual or personal capacities to Plaintiffs and Plaintiff Class for compensatory damages or, alternatively, nominal damages, for the violation of their rights to be free from unreasonable seizure under the Fourth and Fourteenth Amendments.

49. Plaintiffs and Plaintiff Class are entitled to declaratory relief against the individual Defendants declaring that one or more of them violated Plaintiffs and Plaintiff Class's rights to be free from unreasonable seizure and assault under the Fourth and Fourteenth Amendments of the United States Constitution.

## SECOND CLAIM FOR RELIEF

### (AGAINST DEFENDANT PPB OFFICERS AND WHEELER)

**Article I, Section 9, of Oregon Constitution**

50. Plaintiffs incorporate by reference the allegations above.

51. Plaintiffs and Plaintiff Class are entitled to declaratory relief, declaring that one or more of the individual Defendants violated Plaintiffs and Plaintiff Class's right to be free from unreasonable seizure under the Oregon Constitution, Article I, Section 9.

/ / /

/ / /

/ / /

/ / /

/ / /

## THIRD CLAIM FOR RELIEF

## (AGAINST DEFENDANT CITY)

**Fourth and Fourteenth Amendments to the United States Constitution**

**and 42 U.S.C. § 1983**

52. Plaintiffs incorporate by reference the allegations above.

53. The City has a policy and/or a custom and practice that amounts to a policy of kettling protesters without individualized probable cause and/or reasonable suspicion.

54. Plaintiffs are entitled to declaratory relief declaring that the City's policy and/or custom and practice that amounts to a policy of kettling protesters without individualized probable cause and/or reasonable suspicion violates the Fourth and Fourteenth Amendments of the United States Constitution.

## FOURTH CLAIM FOR RELIEF

## (AGAINST DEFENDANT CITY)

**Article I, Section 9, of Oregon Constitution**

55. Plaintiffs incorporate by reference the allegations above.

56. The City has a policy and/or a custom and practice that amounts to a policy of kettling protesters without individualized probable cause and/or reasonable suspicion.

57. Plaintiffs are entitled to declaratory relief declaring that the City's policy and/or custom and practice that amounts to a policy of kettling protesters without individualized probable cause and/or reasonable suspicion violates Article I, Section 9, of the Oregon Constitution.

## DEMAND FOR JURY TRIAL

58. Plaintiffs hereby demand a trial by jury.

/ / /

/ / /

## PRAYER FOR RELIEF

WHEREFORE, the named Plaintiffs, on behalf of themselves and Plaintiff Class request:

1. An Order certifying this action as a class action pursuant to Rule 23(b)(1)(a), (b)(2), and/or (b)(3) of the Federal Rules of Civil Procedure, certifying the named Plaintiffs as class representatives and designating Steven M. Wilker, Sarah M. Einowski, Alexander M. Tinker, Megan R. Reuther, Mat dos Santos, and Kelly Simon as class counsel;

2. A declaration that one or more of the individual Defendants violated the rights of the members of the Plaintiff Class under Fourth and Fourteenth Amendments to the United States Constitution and/or Article I, Section 9, of the Oregon Constitution;

3. A declaration that the City's policy and/or custom and practice that amounts to a policy of kettling protesters without individualized probable cause and/or reasonable suspicion violates the Fourth and Fourteenth Amendments to the United States Constitution and/or Article I, Section 9, of the Oregon Constitution;

4. An award of compensatory damages, or alternatively an award of nominal damages, in favor of the members of the Plaintiff Class for the violation of their rights to be free from unreasonable seizure under the Fourth and Fourteenth Amendments;

5. An award of reasonable attorney fees, costs, and disbursements (including expert fees and expenses) incurred herein in accordance with 42 U.S.C. § 1988, and under state law in accordance with *Armatta v. Kitzhaber*, 327 Or. 250 (1998), and *Swett v. Bradbury*, 335 Or. 378 (2003);

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

6. Such other and further legal and equitable relief as this Court deems just and proper.

DATED this 24th day of August, 2018.

TONKON TORP LLP


By: /s/ Steven M. Wilker
Steven M. Wilker, OSB No. 911882
Sarah M. Einowski, OSB No. 093412
Alexander M. Tinker, OSB No. 144939
Megan R. Reuther, OSB No. 153919
*Cooperating Attorneys for ACLU Foundation of Oregon, Inc.*

ACLU FOUNDATION OF OREGON
Mat dos Santos, OSB #155766
Kelly Simon, OSB #154213

Attorneys for Plaintiffs